**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Dana Limited,                                     Case No. 3:24-cv-00388

        Plaintiff,

    v.

J.J. Ryan Corp. d/b/a Rex Forge,                **ORDER**

        Defendant.

    This is a post-arbitration dispute. (Doc. 10, PgID. 243). Plaintiff is Dana Limited ("Dana"), a supplier of products for automotive and commercial vehicle markets. (Doc. 1, PgID. 10; *and see* Doc. 8-3, PgID. 97). Defendant is J.J. Ryan Corp. d/b/a Rex Forge ("Rex"), a manufacturer and supplier of forged products for vehicles. (*Id*.; *and see id*.).

    On January 15, 2025, the Arbitrator issued a Final Award after holding a one-day hearing. (Doc. 8, PgID. 67). Both Plaintiff and Defendant submitted briefs. (*Id*.). The Arbitrator concluded the eight-page Award with:

> 1. Dana is awarded $911,405.25 on its claim for excess freight charges;
> 2. Dana is awarded $53,953.00 on its claim for non-conforming charges;
> 3. Rex is awarded $144,382.51 on its claim for improper debits taken by Dana[]; and
> 4. Rex is denied declaratory relief with respect to debits not yet taken by Dana in the amount of $100,547.38.
> This Final Award fully resolves all claims and defenses heard in this Arbitration. Any claim or defense not specifically addressed herein is denied.

(Doc. 8-2, PgID. 9–10).

    Dana filed a Petition in the Court of Common Pleas of Lucas County, Ohio, to confirm the Arbitration Award. (Doc. 1, PgID. 10–12). In its Petition, Dana sought $820,975.74 from Rex,

which is the amount the Arbitrator awarded Dana less the amount he awarded Rex. (Doc. 1, PgID. 11).

On March 3, 2024, Rex removed the case to federal court. (Doc. 1, PgID. 1). Rex moved to vacate the Arbitration Award or in the alternative, to modify or correct the Award. (Doc. 8). Dana opposed Rex's motion (Doc. 10) and Rex filed a Reply brief (Doc. 11).

For the reasons set forth below, I will deny Rex's motion to vacate and/or modify the Arbitration Award and I will confirm the Award as written in the Arbitrator's decision.

## Background

A long-term supply Purchase Agreement governs Dana and Rex's relationship. Under the Purchase Agreement, Dana is the buyer and Rex is the seller. (Doc. 8-4, PgID. 128).

The parties disputed Rex's timing and delivery of goods to Dana and Dana's debiting of Rex's account for those goods. (*See id.*). The parties defined their dispute, in relevant part, as follows:

The dispute has the following two (2) components or "Claims":

1. Dana claims damages resulting from Rex Forge's alleged breach of its delivery and supply obligations under the Purchase Agreement. Dana claims it has incurred freight and quality costs arising from Rex Forge's breach of its delivery and supply obligations under the Purchase Agreement. Rex Forge, on the other hand, denies that it is liable to Dana for the claimed damages. This claim is defined in Amendment No. 5 as "Dana's Claim." […]

2. Rex Forge claims breach of the Purchase Agreement by Dana and damages based on what Rex Forge claims are erroneous RMA/quality debits, overcharges, and offsets. Dana, on the other hand, denies that it is liable to Rex for the claimed damages. This claim is defined in Amendment No. 5 as "Supplier's Claim." […]

(Doc. 8-4, PgID. 128).

The parties agreed that, because they were unable to settle the dispute on their own, they would "engage in a binding, single-day arbitration to resolve" it. (Doc. 8-4, PgID. 128–31). They entered into an Arbitration Agreement that "clarif[ied] the scope and procedure of the agreed upon Arbitration." (*Id.*).

2

The parties' agreed when and where the hearing would occur. (*Id*. at PgID. 129). They also agreed that, "given the expedited nature of the hearing, the rules of evidence will be relaxed." (*Id*.).

The Agreement stated that the "Arbitrator is empowered to weigh the character and quality of any testimony or evidence submitted by the parties in reaching his decision under the evidentiary standards to be determined in the Arbitrator's sole discretion." (*Id*.).

The parties further agreed, "absent good cause to be determined by the Arbitrator, any documents not produced and submitted by December 11, 2023, shall not be considered by the Arbitrator in reaching his decision. Good cause shall include necessary rebuttal or impeachment evidence." (*Id*.).

The Arbitration Agreement also specified that the parties agreed "to submit this matter to the Arbitrator using Ohio Law."[1] (*Id*. at PgID. 129). However, the parties noted that their agreement to do so "shall in no way be interpreted or deemed to be an admission by either party as to the appropriate or applicable law, …" (*Id*.).

Rex, evidently disappointed in the outcome of the Arbitration, challenges it here.  Rex presents three arguments in its motion to vacate and/or modify.

First, it argues that I should vacate the Award because Dana procured the result through false testimony. Second, Rex argues that I should modify the Award because it does not make logical sense because "the [A]rbitrator factually accepted Rex's affirmative defense to Dana's arbitration claim entirely, but also awarded Dana 100% of its claim." (Doc. 8, PgID. 64). And third, Rex

---

[1] Here, the parties' Arbitration Agreement indicates they intended for Ohio law to apply, however, they did not specify whether they intended this to mean only Ohio substantive law applied to the dispute over the sale of goods, or also to include the Ohio Arbitration Act. (*See* Doc. 8-4, PgID. 129).

The Sixth Circuit has observed that "the language of and the law interpreting both the Federal Arbitration Act, 9 U.S.C. §§ 9–11 ("FAA"), and the Ohio Arbitration Act, Ohio Rev. Code §§ 2711.09–2711.13, are almost identical and our interpretation of the two statutes as applied to this matter is virtually indistinguishable[.]" *Wachovia Securities, Inc. v. Gangle*, 125 F. App'x 671, 676 (6th Cir. 2005). As discussed in the Legal Standard section, I will reference the FAA because this case is before me pursuant to diversity jurisdiction. *See Jackson v. Ford Motor Co.*, 842 F.3d 902, 907 (6th Cir. 2016).

argues that I should modify the damage calculation because it "contains significant calculation errors." (*Id.*).

I am not persuaded by any of Rex's arguments.

## Legal Standard

As a general rule, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, presumes that arbitration awards will be confirmed, and "courts should play only a limited role in reviewing the decisions of arbitrators." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (quotations omitted). "When courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (quotations omitted).

Sections 10 and 11 of the FAA govern attempts to vacate and/or modify an arbitration award.

Under Section 10, a federal court may vacate an arbitration award only in limited circumstances, such as "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1).

Section 11 of the FAA governs attempts to modify or correct an arbitration award. Under Section 11, circumstances in which a federal court may vacate an arbitration award include: "Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award," and "[w]here the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. §§ 11(a), (c).

## Discussion

### 1. Fraud or Undue Means

Rex first argues I should vacate the Award because Dana fraudulently, or through undue means, obtained the Award.

The Award states: "The Arbitrator finds that Dana's claim as to the untimeliness of deliveries is meritorious (Lair Testimony), and that Dana is entitled to recover $911,405.25 from Rex." (*See* Doc. 8 (citing Award (Doc. 8-2, PgID. 90)).

Rex argues that Dana's employee, Doug Lair, lied at the arbitration hearing when Lair failed to disclose Dana's ability to cover its losses.[2] (*Id.*).

Based on the above-quoted sentence in the Award, Rex argues that the Arbitrator "found Dana's claim for $911,405.25 in expedited shipping charges to be valid *based specifically on Mr. Lair's above-referenced testimony.*" (*Id.* at PgID. 70 (emphasis in original)).

Rex argues that after the hearing, it "discovered and believes that Mr. Lair's testimony was false." (*Id.* at PgID. 70). Rex points to its former CEO, John Deliso's, declaration that he heard about Dana's ability to cover from two Dana employees: Dale Payne and Mitchel Dunlap.

Rex also offers the declaration of a former Rex employee, Justin Jarnigan, who also heard Dunlap say that Rex would see a lower demand from Dana for one of the goods, since Dana could source the goods directly "through Brazil." (*Id.* at PgID. 71 (citing Doc. 8-6, PgID. 224 (Deliso Declaration); Doc. 8-10, PgID. 226 (Jarnigan Declaration)).

To prevail on a motion to vacate and/or modify an arbitration award, Rex must demonstrate: "(1) clear and convincing evidence of fraud, (2) that the fraud materially relates to an issue involved in the arbitration, and (3) that due diligence would not have prompted the discovery of the fraud during or prior to the arbitration." *Int'l Bhd. of Teamsters, Loc. 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 (6th Cir. 2003).

Rex falls short on all three requirements.

---

[2] Neither party disputes that under the Purchase Agreement, Dana was required to purchase 100% of its supply of the goods at issue from Rex; nor did the parties contest this issue in the Arbitration. (*See id.*, PgID. 69).

### a.  Clear and Convincing Evidence of Fraud

Rex's evidence of fraud is based on two come-lately declarations from former Rex employees.[3] While the parties explicitly agreed that the hearing would operate with a "relaxed" set of evidentiary rules, I cannot overlook the hearsay-upon-hearsay presented in these declarations.

The Sixth Circuit instructs that: "[b]oth fraud and undue means require proof of intentional misconduct or bad faith." *Bauer v. Carty & Co.*, 246 F. App'x 375, 378 (6th Cir. 2007).

Rex's former employees' declarations that they heard that Dana could cover the goods does not suffice to show intentional misconduct or bad faith on Dana's part. This falls far short of the "clear and convincing" standard that Rex must meet.

### b.  Fraud Materially Relates to an Issue Involved in the Arbitration

The content of the alleged fraud—that Dana was, in fact, able to procure the goods from a source besides Rex—is of dubious materiality. In the Arbitration, the parties did not contest Dana's ability to "cover" or its obligation to purchase 100% of the goods at issue from Rex.

Moreover, the Award simply references "(Lair Testimony)." The logical leaps that Rex asks me to make would require me to re-weigh the evidence myself. This is precisely what the law prohibits.

### c.  Due Diligence Would Have Prompted the Discovery of the Fraud Before or During the Arbitration

Rex's fraud claim fails the due diligence requirement. Deliso declared that, before the hearing, he twice-heard about Rex's ability to cover.

Dana states that Deliso attended the hearing and, indeed, that Dana expected Rex to call Deliso as a witness (though, ultimately, Rex did not call Deliso). (Doc. 10, PgID 251–52). Rex neither

---

[3] Moreover, the timing described in Jamigan's declaration covers a different time frame than is relevant to the parties' dispute, and accordingly, his declaration is irrelevant.

denies this in its Reply brief, nor does Rex explain why it chose not to pursue Deliso's testimony at the hearing.

Even if Deliso were not at the hearing, Rex still could have submitted this argument to the arbitrator much earlier. Indeed, mitigation and cover are long-standing and predictable affirmative defenses in a breach of contract case. *See, e.g., F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.*, 47 Ohio St. 2d 154, 159 (1976).

Rex also could have followed the Arbitration Agreement's requirements for presenting additional arguments after the deadline for "good cause." It did not do so; Rex waived the argument. *See Armco Emps. Indep. Fed'n, Inc. v. AK Steel Corp.*, 149 F. App'x 347, 352 (6th Cir. 2005) ("Generally, arguments not presented to an arbitrator are deemed waived and cannot be raised for the first time in an enforcement action in a district court.")

In sum, I reject Rex's argument that Liar's testimony was fraudulently procured. I reject the assumption that the alleged fraud, when combined with other unpresented arguments, was the lynchpin of the Arbitrator's decision. There is no indication that the Lair testimony took Rex by surprise, or that it sought to supplement the record. In sum, I reject Rex's too little, too late argument that Dana fraudulently procured the award.

## 2. Contradictory Rulings and Calculation Error

The Sixth Circuit instructs that arguments under 9 U.S.C. § 11(c) must concern a "process-driven problem" and not a "merits dispute." *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 378 (6th Cir. 2008) (citations omitted). The *Grain* Court explained: "An award that is 'imperfect in matter of form,' as these terms suggest, is one that suffers from a scrivener's error or that otherwise does not deliver on the arbitrator's stated purpose in granting relief." *Id*. (citations omitted). These errors include, for example, "technical errors" such as where the arbitrator's

written decision does not reflect the award they orally announced due to a simple mistake. *Id*. (citing cases).

Rex's arguments are merits-based; not technical.

Rex argues that, if the Arbitrator accepted Rex's affirmative defense in its entirety, then it should not have awarded Dana the entirety of its claim. (Doc. 8, PgID. 77–79). This is merits-based. The Supreme Court has explained that a district court's modification of an award in circumstances where the Arbitrator has not erred, "would improperly substitute a judicial determination for the arbitrator's decision that the parties bargained for" in their agreement. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 510 (2001).

Were I to accept Rex's argument, I would essentially re-write the Arbitrator's Award. The law prohibits me from undertaking this type of judicial review. *Id*.

Indeed, even an arbitrator's "improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award." *Id*. at 509 (citation omitted).

The parties' Arbitration Agreement is clear. They desired to have the Arbitrator resolve their dispute on an expedited basis. They agreed the Arbitration would be "binding." (Doc. 8-4, PgID. 128). They granted the Arbitrator the discretion to make the decisions he needed to make under relaxed evidentiary rules. (*Id*. at PgID. 129).

This is precisely what the Arbitrator did. That Rex is not satisfied with the Arbitrator's Award is not a reason to find that he erred so seriously that it rendered the issues undecided.

Likewise, I reject Rex's argument that the Arbitrator made a calculation error requiring modification.

The Sixth Circuit explains that "[b]y its terms, 'an evident ... miscalculation of figures' concerns a computational error in determining the total amount of an award—what the Fourth

8

Circuit calls a 'mathematical error appear[ing] on the face of the award.'" *Grain supra*, 551 F.3d at 378 (citations omitted).

Here, Rex does not argue that the Arbitrator made a mathematical gaffe; rather, it argues that the merits of the case compel a different calculation from what the Arbitrator found. This is an improper merits-based argument. Under *Grain*, I cannot address it.

I thus reject Rex's arguments and deny its request that I modify the Award.

An order rejecting a motion to vacate and/or modify an arbitration is, in effect, an order confirming the award. *See Milan Express Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 672 F. App'x at 553, 556 (6th Cir. 2016) ("A court's denial of a motion to vacate an award is often treated as equivalent to an order confirming an award."). Accordingly, I confirm the Arbitration Award.

**Conclusion**

It is, therefore, ORDERED THAT:

> 1. Rex's motion to vacate and/or modify the Arbitration Award (Doc. 8) be, and the same hereby is, denied;

> 2. The Arbitration Award be, and hereby is, confirmed; and

> 3. The case is dismissed with prejudice.

SO ORDERED.
Date: 11/18/2024

*/s/James G. Carr*
Sr. U.S. District Judge